UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Ashraf EBID,

    Plaintiff,

    v.

GLOBAL FUTURES & FOREX, LTD.

    Defendants.

Civil No. 10-cv-4372 (AET)

**OPINION & ORDER**

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon Defendant Global Futures & Forex, Ltd.'s ("GFF") Motion to Dismiss or, in the alternative, to Transfer Venue, pursuant to Rule 12(b)(6) and 28 U.S.C. § 1404(a) [docket #5]. Plaintiff Ashraf Ebid opposes the motion. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons detailed below, Defendant's 12(b)(6) Motion to Dismiss is denied, and Defendant's § 1404(a) Motion to Transfer is granted.

## II. BACKGROUND

**A. Employment Agreement**

On December 1, 2001, Plaintiff Ashraf Ebid entered into an Employment Agreement with Defendant Global Futures & Forex, Ltd. ("GFF"), whereby he would serve as GFF's Director of Sales and New Business Development. (Compl. ¶¶ 7, 11) [1]. The Employment Agreement sets

forth the terms of Ebid's employment, including compensation[1] and termination. Specifically, the agreement states:

> If Employer terminates without cause, employer will pay a commission with respect to any account procured by Employee prior to the date of termination, including any account introduced by any referral source procured by Employee prior to the date of termination, but only as to any round-turn lots traded by such accounts prior to the date of termination and within 12 months after the date of termination.

(Muhammad Rasoul Aff. Ex. A, at ¶ 11) [5 Attach. 4]. Ebid was terminated on June 9, 2010. (Compl. ¶ 17.) Although Ebid received salary payments prior to his termination, (*Id.* ¶ 15), GFF has not paid Ebid the commissions to which he allegedly is entitled under the Employment Agreement. (*Id.* ¶ 19.)

**B. Initial Action**

On August 25, 2010, Ebid filed the Complaint [1] against GFF alleging that it had breached the written Employment Agreement by terminating him without cause and refusing to pay compensation owed as a result of the termination. (*Id.* ¶ 21.) Plaintiff's Complaint further alleges that GFF's refusal to pay compensation constitutes a New Jersey Wage Payment Law violation, N.J.S.A. 34:11-4.1 *et seq.*, (*Id.* ¶ 25), as well as unjust enrichment, (*Id.* ¶ 28).

**C. Motion to Dismiss**

On September 23, 2010, Defendant GFF filed the present Motion to Dismiss or, in the alternative, to Transfer Venue [5]. Defendant argues that the forum selection clause in the Employment Agreement designates Kent County, Michigan as the proper forum for disputes arising out of the agreement. (Mem. in Supp. 2) [5 Attach. 1]. Accordingly, Defendant argues that this Court should give effect to the parties' agreement by either dismissing this action or

---

[1] The precise amount of Ebid's compensation was apparently modified orally several times through April 2010, with the most recent agreement amounting to a $600,000 annual salary, 10% commission on the first $50 million of GFF's net profits from institutional sales, 5% commission on institutional sales net profits beyond $50 million, additional commission based on a sliding scale of percentages of GFF's net profits from operations other than institutional sales, and participation in employee benefit plans. (Compl. ¶ 14.)

transferring it to the Western District of Michigan. (*Id*. at 4.) Defendant argues that there is no strong reason to ignore the parties' stated forum because there was no fraud or undue influence in executing the agreement and there is no hardship in terms of public or private interests weighing against Michigan venue. (*Id.* at 7.)

Plaintiff argues in response that the Employment Agreement is not controlling, and that this Court should instead look to the parties' April 2006 Confidentiality and Non-Competition Agreement ("CNC Agreement"), which designates as the appropriate venue the state county or federal district where Ebid was primarily employed—in this case, New Jersey.[2] (Mem. in Opp'n 4) [12]. Plaintiff argues in the alternative that the use of two contradictory forum selection provisions creates an ambiguity that must be construed against the drafter, GFF, to find that neither provision is controlling and that, accordingly, the case is properly before this court. (*Id.* at 8–11.) Finally, Plaintiff argues that the private and public interests do not support transfer of venue to the Western District of Michigan. (*Id.* at 14–17.)

### III. ANALYSIS

**A. Applicable Statute**

Because questions of venue are procedural rather than substantive, a federal court determines the effect to be given a contractual forum selection clause in a diversity case by applying federal law rather than state law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (discussing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–31 (1988). In federal court, venue questions are governed by two alternative statutory provisions: where both the original and the requested venue are proper, a

---

[2] Defendant disputes this factual assertion, pointing out that Plaintiff's home office was only registered with the National Futures Association until 2004, when GFF opened and registered its New York branch office. (Mem. in Further Supp. 13) [14]. From this point onward, Plaintiff apparently worked from and associated with the New York office, as evidenced by his business cards and stationery. (Muhammad Rasoul Aff. II, Ex. A, B, C, D) [14 Attach. 2–6].

case may be transferred under 28 U.S.C. § 1404(a); where the original venue is improper, a case must be dismissed or transferred under 28 U.S.C. § 1406. *Jumara*, 55 F.3d at 878. Where the original venue is proper but the parties' not-unreasonable forum selection clause points to another federal venue, it is preferable to transfer rather than to dismiss. *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001).

Here, it is undisputed that, absent the forum selection clause, venue would be proper in either this Court or otherwise in Michigan. This case is before the Court on federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332. (Compl. ¶ 4.) The parties are indeed diverse, as Ebid resides in New Jersey and GFF is incorporated in Michigan. (*Id.* ¶¶ 2–3.) Moreover, the parties do not dispute that the amount in controversy exceeds $75,000 exclusive of interests and costs. (*Id.* ¶ 4.) Finally, GFF does business in New Jersey, (Compl. ¶ 3), so venue is proper in this Court under 28 U.S.C. § 1391(c). *See Stewart Org.,* 487 U.S. at 29 n.8. Venue would also be proper in the Western District of Michigan because GFF is incorporated there and thus "resides" there. 28 U.S.C. 1391(a)(1). Because venue would be proper in either this Court or in the Western District of Michigan, this Court will apply 28 U.S.C. § 1404(a). Although Defendant has moved to dismiss under Rule 12(b)(6) in addition to its motion to transfer under § 1404(a), this Court's analysis proceeds solely under § 1404(a) in light of the Third Circuit's preference for transfer over dismissal in cases where the original venue is proper but a forum selection clause points to another venue.

**B. Transfer of Venue Under § 1404(a)**

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2010). The burden of establishing the need for transfer rests with the moving party. *Jumara*, 55 F.3d at 879 (3d Cir. 1995). In determining whether

transfer is appropriate, courts typically engage in a multi-factor balancing test whereby they consider the private and public interests at stake. *Id*.

Private interests include: (1) plaintiff's forum preference as reflected by the initial filing; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial situations; (5) the convenience of the witnesses to the extent that witnesses might be unavailable for trial in either fora; and (6) the location of books and records. *Id.* (citations omitted).

Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted).

Within this framework, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum," *id.* at 880, and accordingly receives "substantial consideration," though not dispositive weight. *Id.* (citations omitted). Thus, where a forum selection clause governs, the plaintiff's choice of forum does not receive the usual deference it would otherwise receive. *Id.* (citations omitted). Moreover, the forum selection clause will be considered valid unless the party objecting to its enforcement establishes the existence of "fraud, influence or overweening bargaining power." *Id.* at 880 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972)).

**C. Relevant Forum Selection Clause**

The parties dispute which forum selection clause governs the present action: Defendant GFF asserts that the 2001 Employment Agreement's forum selection clause applies; Plaintiff Ebid asserts that the forum selection clause in the parties' 2006 CNC Agreement applies. We agree

with GFF that the Employment Agreement's forum selection clause is the applicable one in this case.

The Employment Agreement's forum selection clause states, "Any action at law, suit in equity, or judicial proceeding for enforcement of this Agreement or any provision of this Agreement will be instituted only in the federal or state court situated in the County of Kent, State of Michigan. (Rasoul Aff. Ex. A, at ¶ 17.)

The CNC Agreement's forum selection clause states, "All disputes, claims and controversies that arise out of or relate to this Agreement shall be resolved only in a state court located in the county where [Ebid is] primarily employed or in a federal court for the federal district where [Ebid is] primarily employed." (Ashraf Ebid Aff. Ex. 1, at ¶ 11) [11].

Plaintiff does not argue that the immediate dispute directly arises out of the CNC Agreement.[3] Rather, Plaintiff argues that the CNC Agreement's forum selection clause supersedes the one in the Employment Agreement, based on the additional "Miscellaneous Provision" in the CNC Agreement stating, "This Agreement contains the entire and only agreement between me and the Company respecting the subject matter hereof and supersedes all prior agreements and understandings between us as to the subject matter hereof; . . . ." (*Id.* ¶ 10.) Plaintiff asserts that because both agreements regard the same "subject matter," (Mem. in Opp'n 4–5), the CNC Agreement's forum selection clause controls and therefore this dispute must be litigated in New Jersey, where Ebid was primarily employed. (*Id.* at 3 & n.2.)

We find that Plaintiff's interpretation of the Miscellaneous Provision unduly stretches the definition of "subject matter." The Employment Agreement sets forth the terms and conditions by which Ebid will render professional services to GFF, specifying Ebid's duty to manage GFF's

---

[3] Indeed, nowhere in the twenty-nine paragraphs of the Complaint does the Plaintiff even mention the CNC Agreement, much less allege any breach thereof.

sales force and business development, the benefit plans Ebid would receive, and the effect of termination by GFF with or without cause. (*See* Rasoul Aff. Ex. A.) The CNC Agreement concerns Ebid's duty not to disclose confidential information, Ebid's duty to return Company property upon termination, and GFF's entitlement to injunctive relief in the event of breach by Ebid. (*See* Ebid Aff. Ex. 1.) While there may be some overlap insofar as both contracts address similar topics, such as "Severability" and "Governing Law," and insofar as both contracts are between Employer and Employee, the similarities end there. The most reasonable interpretation of the Miscellaneous Provision is that the CNC Agreement only supersedes any prior agreements relating to confidentiality and non-competition. Thus, the Employment Agreement was not superseded by the CNC Agreement, and the Employment Agreement's forum selection governs this dispute.

We also disagree with Plaintiff's alternative argument that the existence of two forum selection clauses in two separate agreements creates an ambiguity that must be construed against GFF. (Mem. in Opp'n 8–11.) The forum selection clauses in the Employment Agreement and the CNC Agreement are clearly worded to apply only to disputes arising out of the specific agreement in which they are included. *See* (Rasoul Aff. Ex. A, at ¶ 17); (Ebid Aff. Ex. A, at ¶ 11.) Because each clause is unambiguous in isolation, the only question is whether they must be viewed conjunctively and are ambiguous for this reason. The Employment Agreement and the CNC Agreement were executed five years apart. The only apparent connection between the two is that the CNC Agreement states that compensation shall be agreed upon separately and the previously-executed Employment Agreement contains the specifics of the agreed-upon compensation. Absent any further evidence that these two agreements are intended to be read together, the Court cannot conclude that their terms are so intertwined that the difference in forum selection clauses can only be resolved by disregarding both clauses entirely. To the contrary, we give effect to the

forum selection clause contained in the agreement relevant to this case—the Employment Agreement.[4]

### D. Balance of Private and Public Interest Factors

Having established that the Employment Agreement's forum selection clause governs, we consider the private and public interests under § 1404(a).

#### 1. Private Interest Factors

Courts typically give deference to the plaintiff's choice of forum in which to file the lawsuit, unless the plaintiff has freely, contractually chosen another appropriate venue. *Jumara*, 55 F.3d at 880. In such cases, the burden is on the plaintiff to show that it should not be bound to the forum agreed upon in the contract. *Id.* Because Plaintiff Ebid contractually agreed to the forum selection clause in the Employment Agreement and has not met his burden of showing that he should not be bound thereto, the Court finds that the parties' preferred forum is the Western District of Michigan.

With respect to where the claim arose, Plaintiff argues that GFF failed to pay compensation arising from his work in New Jersey. (Mem. in Opp'n 15.) Defendant argues that Plaintiff actually worked from the New York branch office from 2004 onwards, and that he had been working in London for an extended period up to the time of his termination. (Mem. in Further Supp. 13.) Given the frequency of Ebid's work-related travel, this Court finds it difficult to determine which forum contains the "center of gravity of the dispute," assuming the dispute primarily regards the work Ebid performed meriting payment from GFF. However, that Ebid associated himself with GFF's New York branch office, as evidenced by his stationery and business cards, (Muhammad Rasoul Aff. II, Ex. A, B, C, D) [14 Attach. 2–6], during at least half

---

[4] Because Ebid has not argued that the Employment Agreement's forum selection clause is tainted by "fraud, influence, or overweening bargaining power," we need not consider whether the forum selection clause is unreasonable. *Jumara*, 55 F.3d at 880 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972).

of his tenure as a GFF employee suggests that, wherever the center of gravity of the dispute may lie, it is likely not in New Jersey.

As to the convenience of the parties, Defendant argues that travel would not be inconvenient to Ebid, given that he has worked for GFF in New York, London, Singapore, Sydney and Dubai. (Mem. in Supp. 9.) Plaintiff lives in New Jersey. Although Plaintiff has not argued that it would be financially difficult for him to travel, this Court is inclined not to count against Plaintiff the work-related travel he undertook on behalf of the Defendant. Because GFF also does business in New Jersey, litigating here should not be particularly inconvenient to the company. Thus, this factor favors New Jersey venue.

Relevant witnesses are likely to include Plaintiff Ebid as well as GFF officers Gary Tilkin, Muhammad Rasoul, and Tom Sullivan. (Mem. in Supp. 8); (Mem. in Opp'n 15.) However, neither party argues that any of these witnesses would be *unavailable* for trial in either forum. Indeed, Mr. Rasoul's past travel to New Jersey on business makes clear that he and the other officers likely would be available. (Mem. in Opp'n 15.) Plaintiff has provided no reason why he would not be able to render testimony in Michigan. Thus, this factor also does not point in either direction.

With regard to the location of evidence, Defendant argues that documents relating to Ebid's employment are located at GFF's headquarters in Michigan. (Mem. in Supp. 8.) Plaintiff argues that relevant documents may be located in Michigan, New Jersey, or both, and that this case is not likely to involve voluminous production of documents warranting transfer of the action. (Mem. in Opp'n 16.) Given the uncertainty on which Plaintiff's argument rests, we are inclined to favor Defendant's position.

### 2. Public Interest Factors

With respect to the enforceability of the judgment or practical considerations that would

make trial expeditious and inexpensive, neither party has briefed these factors, so the Court need not consider them at length. Suffice it to say that this Court will be able enforce the judgment because GFF does business in New Jersey, and that there is little reason to believe that the Court could not conduct trial in an expeditious manner.

In terms of relative court congestion, Defendant points out that it takes longer to dispose of and try civil cases in the District of New Jersey than in the Western District of Michigan.[5] The lesser relative congestion in the Western District of Michigan, slight though it may be, somewhat favors transfer of venue.

Regarding the local interest in deciding local controversies, Plaintiff argues that New Jersey has an interest in deciding this case because the Complaint alleges a violation of New Jersey's Wage Payment Act. (Mem. in Opp'n 16 (citing N.J.S.A. 34:11-4.1 *et seq.*).) The crux of Plaintiff's Complaint appears to be his breach of contract claim. This contract claim is necessarily antecedent to Ebid's Wage Payment Act claim. Indeed, any finding regarding the Wage Payment Act claim would depend on the interpretation of the Employment Agreement, which is governed by Michigan law, in order to determine whether Ebid's termination was "without cause." Thus, while we agree that New Jersey has an interest in claims arising under the Act, we cannot conclude that this interest favors New Jersey venue in this case.

With respect to public policies of the fora, Defendant asserts that the public policy both in New Jersey and in Michigan favors enforcement of contractual forum selection clauses. (Mem. in Supp. 9 (citing *Tessler & Weiss/Premesco, Inc. v. Sears Holding Mgmt. Corp.*, Civ. No. 09-1243, 2009 WL 3335570, at *7 (D.N.J. Oct. 15 (2009).) We agree, and find that this factor points to our honoring the parties' choice of Michigan venue as stated in the Employment Agreement.

---

[5] Specifically, the Defendant notes that, for 2009, the median time from filing to disposition was 6.9 months in the Western District of Michigan versus 7.6 months in the District of New Jersey, and the median time from filing to trial was 29 months in Michigan versus 37.7 months in New Jersey. (Mem. in Supp. 9 (citing *Federal Court Management Statistics*, http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2009.pl).)

Finally, with regard to this Court's familiarity with applicable state law, Defendant argues that under the Employment Agreement, Michigan law will apply to Ebid's claims (Mem. in Supp. 9); Plaintiff argues that the CNC Agreement designates New Jersey law as governing law, (Mem. in Opp'n 17). The present litigation concerns the parties' obligations under the Employment Agreement, not the CNC Agreement. Accordingly, Michigan Law applies to this dispute. While the Western District of Michigan may be more familiar with Michigan law than this Court, this factor is relatively neutral.

Having reviewed the public and private interest factors, and in light of the substantial consideration given to the parties' forum selection clause specifying Michigan as the appropriate venue, this Court finds that transfer is warranted. Accordingly, Defendant's Motion to Transfer under § 1404(a) is granted.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS, this 22nd day of November, 2010,

ORDERED that Defendants' Motion to Dismiss [5] is DENIED; and it is further

ORDERED that Defendants' Motion to Transfer [5] is GRANTED.

                                           **/s/ Anne E. Thompson**

                                           ANNE E. THOMPSON, U.S.D.J.